JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re HAWKEYE ENTERTAINMENT, LLC,<br><br>     Debtor. | Case Nos. 2:20-cv-10656-FLA;<br>      1:19-bk-12102-MT<br><br>**ORDER AFFIRMING BANKRUPTCY COURT ORDER GRANTING DEBTOR'S MOTION TO ASSUME LEASE AND SUBLEASE** |
| SMART CAPITAL INVESTMENTS I, LLC, *et al*.,<br><br>     Appellants,<br><br>   v.<br><br>HAWKEYE ENTERTAINMENT, LLC,<br><br>     Appellee. | |

**RULING**

Before the court is Smart Capital Investments I, LLC, Smart Capital Investments II, LLC, Smart Capital Investments III, LLC, Smart Capital Investments IV, LLC, and Smart Capital Investments V, LLC's (collectively, "Smart Capital" or "Appellant") appeal of the order of the United States Bankruptcy Court, Central District of California entered October 27, 2020 ("Order") finding Debtor Hawkeye Entertainment LLC ("Hawkeye" or "Appellee") did not default under its lease agreement with Smart Capital, dated July 17, 2009 ("Lease"), for purposes of 11 U.S.C. § 365(b)(1) ("§ 365").  For the reasons set forth below, the Bankruptcy Court's Order is AFFIRMED.

**BACKGROUND**

Smart Capital leases to Hawkeye the first four floors and a portion of the basement of a building located in Los Angeles, California (the "Property").  Dkt. 15 at 9.[1]  Hawkeye uses the leased space (the "Premises") primarily to operate a dance club and event venue.  *Id*.  In August 2019, Smart Capital served Hawkeye a notice of default, identifying numerous breaches of the Lease, and later served Hawkeye a three-day notice to quit.  *Id*.  Hawkeye commenced the underlying bankruptcy case on August 21, 2019, before the Lease terminated.  *Id*.

On October 10, 2019, Hawkeye filed a motion before the Bankruptcy Court to assume the Lease ("Lease Assumption Motion").  *Id*. at 10.  Smart Capital opposed the Lease Assumption Motion, asserting Hawkeye had breached the Lease, that Hawkeye had caused damages that had not been cured, and that Hawkeye had not shown adequate assurance of future performance.  *Id*.

The Bankruptcy Court held an evidentiary hearing on the Lease Assumption Motion over four days from October 13 to October 16, 2020 (the "Hearing").  *Id*.  At

---

[1] Citations to page numbers of docket entries are to the page numbers assigned by the court's CM/ECF header.

the conclusion of the Hearing, the Bankruptcy Court granted the Lease Assumption Motion and entered the Order on the Lease Assumption Motion ("Order"). *Id.*; Dkt. 16 at 5. In the Order, the Bankruptcy Court stated that Hawkeye was not required to make a showing of cure or adequate assurance of future performance because Smart Capital "did not satisfy its burden under 11 U.S.C. § 365 of demonstrating a material default under the Lease…." Dkt. 16 at 16. Smart Capital timely filed a notice of appeal of the Order on November 10, 2020.

## STANDARD OF REVIEW

When acting in its appellate capacity under 28 U.S.C. § 158(c)(1), the District Court reviews legal conclusions de novo and factual conclusions for clear error. *In re Olshan*, 356 F.3d 1078, 1083 (9th Cir. 2004). De novo review requires this court to "consider a matter anew, as if it has not been heard before, and as if no decision had been rendered previously." *In re Smith*, 435 B.R. 637, 643 (B.A.P. 9th Cir. 2010). Clear error review, however, is "highly deferential" and reversal is only proper if the court has "a definite and firm conviction that a mistake has been committed…." *In re Sussex*, 781 F.3d 1065, 1071 (9th Cir. 2015).

Mixed questions of law and fact are those which require the court to apply an established set of facts to an undisputed rule of law. *U.S. Bank Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Village at Lakeridge, LLC*, 138 S. Ct. 960, 966 (2018). "[T]he standard of review for a mixed question all depends—on whether answering it entails primarily legal or factual work." *Id.* at 967. When the question involves primarily legal principles, the court should review the lower decision de novo. *See id.* When the question involves primarily factual issues "compelling [the court] to marshal and weigh evidence," the court must review for clear error. *See id.*

## DISCUSSION

With exceptions not relevant here, a debtor in possession enjoys the rights, power, and duties of a trustee. 11 U.S.C. § 1107. Accordingly, a debtor in possession may, subject to the court's approval, "assume or reject any executory contract or

3

unexpired lease of the debtor." *Id.* § 365(a). Under 11 U.S.C. § 365(b)(1), if a "default" has occurred on the executory contract or unexpired lease, then the debtor in possession must provide certain cures and assurances before it may assume the contract or lease:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1)(A)-(C).

"In a proceeding under § 365, the party moving to assume a lease has the ultimate burden of persuasion that the lease is one subject to assumption and that all requirements for assumption have been met." *In re Rachels Indus., Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990) (citations omitted). The opposing party, however, "has the initial burden of showing defaults and that those defaults have been properly noticed to the lessee." *Id*. "If defaults are established by the proof, then the burden

4

shifts back to the debtor to provide satisfactory proof that the defaults have either been cured or will be promptly cured and that there would be adequate assurance of future performance." *Id.* If, however, "the proof does not establish any default in an executory contract or unexpired lease, the elements of § 365(b)(1) are not required to be proven by the debtor." *Id.*

The Ninth Circuit has explained the purpose of § 365 as follows:

> [T]he purpose behind § 365 is to balance the state law contract right of the creditor to receive the benefit of his bargain with the federal law equitable right of the debtor to have an opportunity to reorganize. [*In re Circle K Corp.*, 190 B.R. 370, 376 (B.A.P. 9th Cir. 1995)]; *see also City of San Francisco Market Corp. v. Walsh*, (*In re Moreggia & Sons, Inc.*), 852 F.2d 1179, 1185 (9th Cir. 1988). Section 365, in conjunction with the automatic stay provision of section 362, accordingly suspends, once the bankruptcy petition is filed, the termination of a lease that is in default; it extends a debtor lessee's opportunity to cure any defaults until the debtor has the chance to decide whether to assume the lease. *See* 11 U.S.C. §§ 362, 365 (1994); *Post v. Sigel & Co.*, (*In re Sigel & Co.*), 923 F.2d 142, 144–45 (9th Cir. 1991). The lessor will then get the benefit of its bargain upon assumption, when the debtor lessee must cure the defaults. *See* 11 U.S.C. § 365(b)(1).

*In re Circle K Corp.*, 127 F.3d 904, 909 (9th Cir. 1997).

Smart Capital advanced several theories of default at the Hearing, including the following it continues to pursue on appeal: (1) Hawkeye's failure to pay timely rent in April 2020; (2) Hawkeye's failure to sign an estoppel certificate; (3) Hawkeye's entry into a contract with Fearless LA, a religious group, for use of the premises; (4) Hawkeye's failure to hold insurance policies of certain minimums provided in the Lease; and (5) Hawkeye's sale of alcohol on the ground floor of the space in violation of the Lease. Dkt. 15 at 17-28.

According to Smart Capital, these constitute "defaults" for the purposes of § 365(b)(1). Noting that "default" is not defined under the Bankruptcy Code, Smart Capital argues the plain meaning of the term implies any breach of a lease agreement—whether material or not—is sufficient to trigger Hawkeye's burden under

§ 365(b)(1)(A)-(C) to show the lease is subject to assumption and that all requirements for assumption have been met. Dkt. 15 at 21 (citing *In re Metromedia Fiber Network, Inc.*, 335 B.R. 41 (Bankr. S.D.N.Y. 2005)). Hawkeye disagrees and argues the existence and nature of a default under an unexpired lease is determined pursuant to state law of material breach. Dkt. 17 at 26. Under that standard, Hawkeye contends, the late payment and other alleged breaches were not material and, thus, not defaults under § 365. *Id.* at 26-27. For the reasons stated below, the court agrees with Hawkeye and affirms the Bankruptcy Court's legal conclusion that, to constitute a default under § 365, a breach of an unexpired lease agreement must be sufficiently material to warrant the lease's termination under state law.

Courts have recognized that state law is to be applied in the interpretation of undefined terms in § 365. The Ninth Circuit, for example, has held the term "executory contract" under § 365 must be construed with respect to state contract law. *In re Cochise Coll. Park, Inc.*, 703 F.2d 1339, 1348 n.4 (9th Cir. 1983) ("Although whether a given contract is 'executory' under the Bankruptcy Act is an issue of federal law … the question of the legal consequences of one party's failure to perform its remaining obligations under a contract is an issue of state contract law."). The Second Circuit, moreover, has construed another undefined term under § 365, "unexpired," with respect to whether a tenant had the power to revive the lease under applicable state law. *Super Nova 300 LLC v. Gazes*, 693 F.3d 138, 142 (2d Cir. 2012); *Brattleboro Hous. Auth. v. Stoltz (In re Stoltz)*, 197 F.3d 625, 629 (2d Cir. 1999) ("[B]ecause property interests are created and defined by state law, federal courts have looked to state law to determine a debtor's interests, including leasehold interests, in the bankruptcy estate."). Thus, in the absence of any authority by Smart Capital that the court is precluded from looking to state law here, the court will look to California law to construe the term "default."

Although any breach of an agreement gives a right to damages, *see Borgonovo v. Henderson*, 182 Cal. App. 2d 220, 231 (1960), only a breach that is material gives a

right to termination. *See Superior Motels, Inc. v. Rinn Motor Hotels*, Inc., 195 Cal. App. 3d 1032, 1052 (1987). This holds true in the landlord-tenant context. *See NIVO 1 LLC v. Antunez*, 217 Cal. App. 4th Supp. 1, 5 (2013) ("Whether a particular breach will give a plaintiff landlord the right to declare a forfeiture is based on whether the breach is material."). Accordingly, whether a particular breach would afford Smart Capital the right to declare a forfeiture—and, hence, establish a default under § 365— is based on whether Hawkeye's alleged breach is material. "Whether a breach is so material as to constitute cause for the injured party to terminate a contract is ordinarily a question for the trier of fact." *NIVO 1 LLC*, 217 Cal. App. 4th Supp. at 4. Thus, this court reviews for clear error the Bankruptcy Court's factual findings as to whether alleged breaches occurred and, if so, whether they were material. *See In re Olshan*, 356 F.3d at 1083.

### I.  April 2020 Rent Payment

Smart Capital's chief argument on appeal concerns Hawkeye's failure to pay timely rent in April 2020. Dkt. 15 at 17-19. According to Smart Capital, Hawkeye defaulted under the Lease when it failed to pay the required minimum rent by April 1, 2020. Dkt. 15 at 17-25. It is undisputed Hawkeye made the rent payment on April 29 or 30, 2020. *Id*. at 14; Dkt. 17 at 38 & n.5. The Bankruptcy Court concluded the late payment was not a default. Dkt. 16 at 170-72.

The Bankruptcy Court did not clearly err in finding, as a factual matter, that the late April 2020 rent payment was not a material breach of the Lease agreement. The Bankruptcy Court found persuasive that there was uncertainty regarding Hawkeye's liability for the April 2020 rent payment, in light of a then-recently issued local moratorium on certain rent payments in the early stages of the COVID-19 pandemic. *Id*. The Bankruptcy Court noted that Hawkeye filed a motion to determine its liability for the rent payment and that, although that motion was denied, Hawkeye made the rent payment less than one month after the due date, including a late fee pursuant to the Lease. *Id*. Based on the evidence before the Bankruptcy Court, this court does not

have "a definite and firm conviction that a mistake has been committed" and will not reverse the Order on this basis. *See In re Sussex*, 781 F.3d at 1071; *see also EDC Associates, Ltd. v. Gutierrez*, 153 Cal. App. 3d 167, 170 (1984) ("It is a general rule that the right of a lessor to declare a forfeiture of the lease arising from some breach by the lessee is waived when the lessor, with knowledge of the breach, accepts the rent specified in the lease.").

## II.     Subletting for Religious Services

Smart Capital next argues the Bankruptcy Court erred in finding Hawkeye's subletting of the premises to Fearless LA, a religious group, was not a breach of the Lease. Dkt. 15 at 27-31. The Lease provided a "Use of Premises" provision as follows:

> 1.17 Use of Premises: The Premises shall be used solely for the operation of a nightclub, restaurant, entertainment venue and related lawful businesses along with the storage use (collectively, the "Permitted Use"). The Premises may not be used for any other purpose without the Landlord's prior written consent. (Article 9).

Dkt. 16 at 22. According to Smart Capital, Hawkeye breached the Use of Premises provision by subletting the space to Fearless LA for religious worship. Dkt. 15 at 27-31.

The evidence before the Bankruptcy Court showed Fearless LA performed religious worship with rock-and-roll music, large stereo equipment, and dancing. Dkt. 16 at 173. The Bankruptcy Court concluded the evidence showed Fearless LA was "not your typical church" and did not host "quiet, private church ceremony[ies]." *Id*. Rather, Fearless LA "had piles of really large stereo boxes" "for blaring music." *Id*. The Bankruptcy Court noted the premises were "a large downtown dance venue" and, thus, the premises were "appropriate for a church that uses large stereo equipment …" *Id*. Furthermore, the Bankruptcy Court noted that "the premises ha[d] included the Fearless L.A. Church for many years" and that there was no evidence of any complaint by the landlord or that the use by Fearless was ever discussed before the

notice of default as a violation of the Lease. *Id.* at 174. Based on the use of the parties over the years and the terms of the Lease, the Bankruptcy Court held that "the Fearless L.A. Church comes within the, quote, 'entertainment venue and related business use' contemplated by the lease, and was not a default." *Id.*

On these facts, the Bankruptcy Court did not clearly err in finding Hawkeye did not breach the Lease agreement, which required the Premises to be used as an "entertainment venue." *Id.* The court, therefore, will not reverse the Order on this basis.

### III. Failure to Sign an Estoppel Certificate

Smart Capital also argues the Bankruptcy Court erred in finding Hawkeye's failure to sign an estoppel certificate did not constitute a breach of the Lease. Dkt. 15 at 25-27. "An 'estoppel certificate' … is a signed certification of various matters with respect to a lease. [It] binds the signatory to the statements made and estops that party from claiming to the contrary at a later time." *Plaza Freeway v. First Mountain Bank*, 81 Cal. App. 4th 616, 626 (2000) (citations omitted).

The Lease provided as follows with respect to estoppel certificates:

> 18.3. Estoppel Certificates. From time to time (but not more than twice in any calendar year), each party shall execute and deliver to the other (or to any third party specified by the requesting party), a written statement certifying the following information: (i) this Lease is in full force and effect and has not been amended, except for any amendments specifically stated, (ii) the expiration date of the Term of this Lease, subject to Tenant's right to extend the Term under Section 3.2, (iii) a statement that there are not, to such party's actual knowledge, uncured defaults on the part of the requesting party, or specifying such defaults if any are claimed, (iv) a statement that, to such party's actual knowledge, such party has no claims or offsets against the requesting party, or specifying such claims or offsets if any are claimed, and (v) the then current monthly Minimum Rent payable under this Lease and the date through which such monthly Minimum rent has been paid. Each party shall deliver such estoppel statement within thirty (30) days of a written request from the other party. Any such estoppel statement

> may be relied on by any prospective purchaser, lender, assignee or subtenant of the Premises.

Dkt. 16 at 44.

The Bankruptcy Court found the following facts. Smart Capital requested Hawkeye sign an estoppel certificate on May 7, 2019. *Id*. at 222. Believing the estoppel certificate would misrepresent information,[2] Hawkeye did not sign the estoppel certificate and, within the 30-day time period required under the Lease, sent an edited copy to Smart Capital with language Hawkeye believed to represent accurately its compliance with the Lease. *Id*. at 223, 225. In the meantime, Michael Chang, on behalf of Smart Capital, executed an estoppel certificate on June 6, 2019, attesting that "Lessor has no knowledge of any uncured default by lessor or lessee under the lease." Dkt. 16 at 170; *see also id.* at 207. In early August 2019, Smart Capital sent Hawkeye a Notice of Default, stating Hawkeye "failed to provide a signed estoppel certificate that complies with the requirements of the lease." *Id*. at 223.

The Bankruptcy Court held the Lease did not require Hawkeye to sign an estoppel certificate if Hawkeye believed the certificate misrepresented information. *Id*. at 225. As the Bankruptcy Court explained:

> The paragraph just does not contemplate blindly signing any document any bank would provide, regardless of accuracy. The Debtor was not willing to certify certain information on the two certificates that were provided, but it was willing to provide an edited version. …
>
> The bottom line is, under 18.1 and 18.3, I find that the Debtor was not under any obligation to sign the estoppel certificate that it believed misrepresented information. [¶] In other words, the lease does not require the Debtor to rubberstamp anything that is presented to it, and it would be against public policy to compel any party to sign an estoppel certificate if it misrepresents facts, or to sign a document that

---

[2] The record is not clear as to the exact misrepresentations Hawkeye believed it would make if it had signed the unedited estoppel certificate.

10

> would effectively waive known claims. That kind of position is just begging for bank fraud to be committed, and I think it's against public policy.

Dkt. 16 at 224, 225. Accordingly, the Bankruptcy Court held Hawkeye's failure to sign the estoppel certificate was not a breach of the Lease and, thus, not a default under § 365. *Id*. at 225-26.

Although Smart Capital argues the Bankruptcy Court "erred as a matter of law," Dkt. 15 at 27, Smart Capital cites no authority in support of this conclusion. Smart Capital relies principally on the contractual language of the estoppel certificate provision, which provides that a party "shall," upon request from the requesting party, respond with a signed estoppel certificate within 30 days. Dkt. 15 at 27. As the Bankruptcy Court explained, however, while the Lease may require a signed estoppel certificate, the Lease would be against public policy if it required a party to attest falsely to factual statements. Dkt. 16 at 224, 225. Smart Capital cites no case or other authority showing the Bankruptcy Court "erred as a matter of law" in so holding. The court, therefore, will not reverse the Bankruptcy Court on this ground.

### IV. Failure to Comply with Conditional Use Beverage Permit

Smart Capital next argues Hawkeye failed to comply with the conditional use beverage ("CUB") of the Lease. Dkt. 15 at 32-34. Article 9.5 of the Lease provides that Hawkeye must "comply with any and all present and future governmental laws, ordinances, rules, regulations and orders applicable to the Premises and Tenant's use and occupancy thereof for the Permitted Use …." Dkt. 16 at 30. Accordingly, Hawkeye was bound by Condition No. 2 of the CUB, as incorporated through the City of Los Angeles' permit approval dated February 25, 2013, which stated: "[t]he use and development of the property shall be in substantial conformance with the plot plan submitted with the application and marked Exhibit 'A', except as may be revised as a result of this action." Dkt. 16 at 235. According to Smart Capital, Exhibit A included a plot plan that did not identify the first floor as a space where alcohol was permitted

to be served, but, nevertheless, Hawkeye served alcohol on the first floor. Dkt. 15 at 33; Dkt. 16 at 257-261.

While the Bankruptcy Court found there was "no dispute that alcohol was served on the first floor in 2019," the Bankruptcy Court ultimately concluded Smart Capital had not met its burden to establish, by a preponderance of the evidence, that such alcohol service constituted a breach of the CUB and, by extension, the Lease. Dkt. 16 at 183-84. The Bankruptcy Court found credible Adi McAbian's ("McAbian") testimony on behalf of Hawkeye that, on each occasion when alcohol was served on the first floor, Hawkeye had secured a daily permit for such service. *Id*. at 184.

Smart Capital argues the Bankruptcy Court clearly erred because it relied solely on McAbian's testimony that such permits were secured and "placed the onus on Smart Capital to prove the non-existence of a document (in this case, a temporary permit for the sale of alcohol on the first floor of the Premises) …." Dkt. 15 at 33. The court disagrees and finds the Bankruptcy Court did not clearly err. The Bankruptcy Court noted Smart Capital bore the burden to establish that the alcohol service was in violation of the lease and found, in light of counterevidence from McAbian, Smart Capital did not meet its burden. Dkt. 16 at 183-84. The court will not reverse the Bankruptcy Court on this basis.

V.     **Failure to Comply with Insurance Provisions**

Smart Capital lastly argues Hawkeye failed to comply with the Insurance requirements of the Lease. Dkt. 15 at 31-32. Pursuant to Article 17 of the Lease, as amended, Hawkeye was required to carry "[n]ot less than Seven Million Dollars ($7,000,000.00) in single limit coverage per occurrence with an annual aggregate of not less than Eight Million Dollars ($8,000,000.00) for bodily injury, personal injury, death and property damage liability with liquor liability and assault and battery coverage endorsements." Dkt. 16 at 62. Before the Bankruptcy Court, Smart Capital attempted to show Hawkeye was in breach of the Lease by carrying insurance

minimums less than the $7 million coverage required. *Id*. at 185-87. According to Smart Capital, the Bankruptcy Court improperly shifted the burden to Smart Capital "to prove that such insurance did *not* exist." Dkt. 15 at 31.

The court disagrees the Bankruptcy Court improperly shifted a burden to Smart Capital. As explained above, and as the Bankruptcy Court explained in its ruling, Smart Capital bore the initial burden to establish Hawkeye defaulted under the Lease. *In re Rachels*, 109 B.R. at 802; Dkt. 16 at 16. As relevant here, therefore, Smart Capital bore the burden to establish Hawkeye did not carry the insurance minimums required under the Lease.

The Bankruptcy Court did not clearly err in finding Smart Capital did not meet its burden to show, by a preponderance of the evidence, that Hawkeye was in violation of the insurance requirements of the Lease. The Bankruptcy Court found credible McAbian's testimony that Hawkeye possessed the required insurance and explained Smart Capital had not submitted evidence tending to show otherwise. *Id*. at 186. On appeal, Smart Capital fails to show "a mistake ha[d] been committed" in the Bankruptcy Court's assessment of the evidence. *In re Sussex*, 781 F.3d at 1071. Although it argues Hawkeye only produced evidence of an umbrella policy with coverage up to $6 million on the date of the hearing, Smart Capital overlooks that the Bankruptcy Court explicitly relied on McAbian's testimony that Hawkeye possessed all insurance required under the Lease to find Smart Capital had not met its initial burden. Dkt. 16 at 186.

Smart Capital further argues it should not have been required to demonstrate Hawkeye lacked coverage because it is impossible to prove a negative. *Id.* As the Bankruptcy Court noted, however, there was no proof Smart Capital requested proof of insurance from Hawkeye nor was this issue included in the three-day notice to quit. *Id.* It appears from the trial record that this issue was first raised in Smart Capital's trial brief and that Smart Capital did not take discovery on this issue. *See id.* at 272-73. The court, thus, finds the Bankruptcy Court properly held that Smart Capital

13

failed to meet its initial burden of showing, by a preponderance of the evidence, that Hawkeye was in violation of the insurance requirements of the Lease, and that the Bankruptcy Court did not commit clear error in finding Smart Capital failed to meet that burden. Accordingly, the court will not reverse the Bankruptcy Court on this basis.

## CONCLUSION

For the foregoing reasons, the court AFFIRMS the Bankruptcy Court's October 27, 2020 Order finding Hawkeye did not default under its lease agreement with Smart Capital for purposes of § 365(b)(1).

IT IS SO ORDERED.

Dated: October 26, 2021

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge