**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE HAWKEYE ENTERTAINMENT, LLC, *Debtor*, | No. 21-56264 <br><br> D.C. No. 2:20-cv-10656-FLA |
| SMART CAPITAL INVESTMENTS I, LLC; SMART CAPITAL INVESTMENTS II, LLC; SMART CAPITAL INVESTMENTS III, LLC; SMART CAPITAL INVESTMENTS IV, LLC; SMART CAPITAL INVESTMENTS V, LLC, *Appellants*, <br><br> v. <br><br> HAWKEYE ENTERTAINMENT, LLC; W.E.R.M. INVESTMENTS, LLC, *Appellees*. | OPINION |

Appeal from the United States District Court
for the Central District of California
Fernando L. Aenlle-Rocha, District Judge, Presiding

Argued and Submitted August 3, 2022
Pasadena, California

| 2 | IN RE HAWKEYE ENTERTAINMENT |
|---|---|

Filed September 23, 2022

Before:  Eugene E. Siler,[*] Consuelo M. Callahan, and Danielle J. Forrest, Circuit Judges.

Opinion by Judge Forrest

## SUMMARY[**]

### Bankruptcy

The panel affirmed the district court's order affirming the bankruptcy court's order allowing Hawkeye Entertainment, LLC, a Chapter 11 debtor, to assume an unexpired commercial lease under 11 U.S.C. § 365.

After a trial on Hawkeye's motion to assume the lease, the bankruptcy court found inapplicable § 365(b)(1), which requires a debtor-in-possession to provide adequate assurances of future performance under a lease where "there has been a default." The bankruptcy court ruled that § 365(b)(1) did not apply because the landlord, Smart Capital Investments I, LLC, and related entities, had failed to demonstrate a material default under California law. The district court affirmed.

---

[*] The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Under § 365(b)(1), a debtor-in-possession may assume a lease only if it cures the default (or provides adequate assurances that it will), provides compensation for any actual pecuniary loss resulting from the default (or provides adequate assurances that it will), and provides adequate assurances of future performance under the lease.

The panel held that § 365(b)(1) applies where a default has occurred, regardless of whether that default has been resolved or is ongoing. The panel also held that "default" was not limited to material defaults that would trigger forfeiture of the lease under California landlord-tenant law. The panel concluded, therefore, that § 365(b)(1) was triggered in this case. The panel further held, however, that the bankruptcy court's failure to analyze § 365(b)(1)'s curative requirements was harmless error. The only curative requirement at issue was adequate assurance of future performance of the lease, and this requirement was satisfied because the bankruptcy court determined that any default was cured as of the time of assumption, and many of the alleged defaults were either not defaults in the first place or were only minor deviations from the contract terms. Thus, any adequate assurance responsive to the alleged defaults would be little more than simple promises not to deviate from the contract again.

## COUNSEL

Steve Burnell (argued) and David S. Kupetz, Sulmeyer Kupetz APC, Los Angeles, California, for Appellants.

Philip A. Toomey (argued), Sandford L. Frey, and Fadi K. Rasheed, Leech Tishman Fuscaldo & Lampl Inc., Pasadena, California, for Appellees.

## OPINION

FORREST, Circuit Judge:

Appellant Smart Capital Investments[1] leased several floors of a commercial building in downtown Los Angeles to Appellee Hawkeye Entertainment, LLC. After a rocky relationship developed, Smart Capital took steps to terminate the lease alleging that Hawkeye had committed numerous breaches. Hawkeye failed to resolve Smart Capital's concerns and filed for Chapter 11 bankruptcy, seeking to assume the lease under 11 U.S.C. § 365 to prevent eviction. The bankruptcy court allowed Hawkeye to assume the lease over Smart Capital's objection, and the district court affirmed. Smart Capital now appeals, arguing that the bankruptcy court erred by not requiring Hawkeye to provide "adequate assurances of future performance" of the lease, as required under 11 U.S.C. § 365. We have jurisdiction under 28 U.S.C. § 158(d), and we affirm. While the bankruptcy court did err in concluding that the curative requirements in section 365(b)(1) do not apply in this case, this error was harmless.

### I. BACKGROUND

**A. The Lease and Hawkeye's Bankruptcy**

In 2014, Smart Capital leased out the first four floors and a portion of the basement of the Pacific Stock Exchange Building in Los Angeles to Hawkeye (and its related entity, WERM Investments, LLC) for use as a dance club. Smart

---

[1] Appellants are several related entities: Smart Capital Investments I, LLC; Smart Capital Investments II, LLC; Smart Capital Investments III, LLC; Smart Capital Investments IV, LLC; and Smart Capital Investments V, LLC. We refer to them collectively as "Smart Capital."

Capital testified that the lease was significantly under market. The parties' relationship soured. Twice, Smart Capital asked Hawkeye to provide an "estoppel certificate" to a lender to assist in Smart Capital's efforts to refinance the mortgage on the property. Both times, Hawkeye refused to fill out the estoppel certificate as Smart Capital requested and instead returned a redlined version stating that there were problems with the premises and that Hawkeye had legal claims against Smart Capital.

In August 2019, Smart Capital sent Hawkeye a notice of default stating that Hawkeye was in nonmonetary default of numerous provisions of the lease. Specifically, Smart Capital alleged that Hawkeye had (1) not equipped adequate emergency fire doors at the premises; (2) violated its Conditional Use Permit in several respects, including by selling alcohol in the ground floor lounge area, failing to remove graffiti, using too much square footage of the premises, conducting too many all-age events, placing large banners on the front of the premises, and installing solid doors instead of glass doors in the VIP area; (3) improperly sublet the premises to Fearless LA for church services; (4) failed to provide estoppel certificates to Smart Capital; and (5) failed to subordinate its rights under the lease to any future mortgage. The notice also stated that Hawkeye had 15 days to remedy the defaults or Smart Capital would have the right to terminate the lease under Article 16.1. Smart Capital sent another notice two weeks later stating that if Hawkeye did not remedy the defaults identified in its prior notice in three days, Smart Capital would terminate the tenancy.

The same day that Smart Capital sent its second notice, Hawkeye sent a letter to Smart Capital explaining that it had tried to get in contact several times but had not received a

response. Hawkeye also denied being in default but stated that it would investigate and needed more information from Smart Capital to evaluate the issues raised. When Smart Capital did not respond, Hawkeye filed for Chapter 11 bankruptcy to prevent termination of the lease.

**B. Hawkeye's Motion to Assume the Lease**

Shortly after filing for bankruptcy, Hawkeye moved to assume the lease under 11 U.S.C. § 365. The bankruptcy court allowed for a lengthy discovery period that extended over a year. In April 2020, while discovery was ongoing, Hawkeye moved to defer rent payments for two months in light of Los Angeles's COVID-19 rent moratorium. While this motion was pending, Hawkeye paid its April rent payment into a trust, not to Smart Capital. The bankruptcy court determined that the moratorium did not apply to Hawkeye's situation and denied the motion. Thereafter, Hawkeye paid its April payment to Smart Capital at the end of that month. This payment was late under the terms of the lease and triggered a late fee penalty, which Hawkeye paid after becoming aware that the fee was assessed around October 2020.

After discovery ended, the bankruptcy court held a trial on Hawkeye's motion to assume the lease and stated its findings of fact in open court. The bankruptcy court stated that Smart Capital's principal "appear[ed] very coached," and "paus[ed] very frequently, to stay on his points he had worked out with his attorneys or in his own mind, in an effort to stick within specifics that would show a default." The bankruptcy court also noted that Smart Capital's principal had told a prospective lender that Smart Capital had "no knowledge of any uncured default" by Hawkeye only two months before it sent its first notice of default to Hawkeye. The bankruptcy court found that many of the alleged

| IN RE HAWKEYE ENTERTAINMENT | 7 |
|---|---|

breaches had been ongoing for years, and just "appeared manufactured, and minor, and made-up, sometimes."

Turning to the applicability of section 365(b)(1), which requires a debtor-in-possession to provide adequate assurances of future performance under the lease where "there has been a default," the bankruptcy court determined that a "default" must be something that warrants forfeiture or termination of the lease under California law. And under California law, the bankruptcy court reasoned that whether such a default exists "is based on whether the breach is material." It then considered all the defaults that Smart Capital had alleged and concluded that they did not warrant forfeiture of the lease, nor did they provide a basis to deny Hawkeye's assumption motion.

Smart Capital argued that section 365(b)(1)'s requirements did apply because the bankruptcy court had "f[ou]nd certain defaults" even if those defaults were "not material." The bankruptcy court rejected this argument, reasoning that section 365(b)(1) is not triggered by minor, immaterial defaults or previously cured defaults:

> I think you're misconstruing my ruling. The defaults that I found occurred I found were not material, and I didn't find [Smart Capital's principal] credible on them, that he was – I thought he was exaggerating them, and he had already certified that everything was fine when he signed the estoppel, that there were no defaults, and then he kept moving the target. So I didn't find that that were any defaults at the time the Debtor filed bankruptcy, you know, that weren't cured, and the curing of the late payment was – I don't think – I don't know that you can

> characterize that as a default . . . None of those were of a level that would warrant forfeiture of the lease. I just cannot read 365 to say any teeny, tiny infraction means a Debtor-In-Possession loses the very valuable asset. That would not be in keeping with state law, which is what I'm supposed to apply in interpreting leases, and that's why I went through, at the beginning of my ruling, what California state law was. It says, 'If there has been a default in an executory contract,' and then whether it's a default is determined under state law, and I don't find it rises to that level as a term-of-art default, your state law. So I disagree that that triggers everything in 365.

The bankruptcy court later issued a written order stating that Smart Capital had failed to demonstrate "a material default under the Lease," and thus section 365(b)(1) was not triggered. The district court affirmed the bankruptcy court.

## II. DISCUSSION

We "review de novo a district court's decision on appeal from a bankruptcy court," and we "review a bankruptcy court decision independently and without deference to the district court's decision." *Decker v. Tramiel (In re JTS Corp.)*, 617 F.3d 1102, 1109 (9th Cir. 2010). Conclusions of law, such as the bankruptcy court's interpretation of the Bankruptcy Code, are reviewed de novo. *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). The bankruptcy court's factual findings are reviewed for clear error. *Greene v. Savage (In re Greene)*, 583 F.3d 614, 618 (9th Cir. 2009).

IN RE HAWKEYE ENTERTAINMENT 9

The "central purpose" of Chapter 11 bankruptcy is to help troubled businesses avoid liquidation by reorganizing. *Fla. Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 37 n.2 (2008). It does this, in part, by allowing the debtor to assume some rights and powers normally afforded only to the trustee during the restructuring process, *i.e.*, becoming a debtor-in-possession. 11 U.S.C. § 1107; *U.S. Tr. v. S.S. Retail Stores Corp. (In re S.S. Retail Stores Corp.)*, 211 B.R. 699, 701 (B.A.P. 9th Cir. 1997) ("When a debtor is a debtor-in-possession, it essentially steps into the shoes of the trustee and has control over the bankruptcy estate."). At issue here is a debtor's ability to assume an unexpired lease under section 365. In recognition of the often-countervailing interests of the landlord, "[i]f there has been a default" of the lease, this provision of the Bankruptcy Code imposes several preconditions that must be met before assumption may be allowed. 11 U.S.C. § 365(b)(1). To summarize, a debtor-in-possession may assume a lease only if it: (A) cures the default (or provides adequate assurances that it will); (B) provides compensation for any actual pecuniary loss resulting from the default (or provides adequate assurances that it will); *and* (C) provides adequate assurances of future performance under the lease. *Id.* § 365(b)(1)(A)–(C).[2] If

---

[2] The full text of the statute reads:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee–
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate

10                  IN RE HAWKEYE ENTERTAINMENT

there has been no default, section 365(b)(1)'s requirements—cure, compensation, and adequate assurances of future performance—are not triggered.

    Here, the parties dispute whether section 365(b)(1) was triggered where the bankruptcy court found that there was no ongoing default at the time of assumption and where it found that any default that had occurred was immaterial under California law. The bankruptcy court concluded that section 365(b)(1) was not triggered, and it allowed Hawkeye to assume the lease without analyzing the statutory curative requirements. Thus, if we conclude that the bankruptcy court erred and section 365(b)(1) was triggered, we must also

---

    or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;

    (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

    (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365.

decide whether the failure to require Hawkeye to satisfy section 365(b)(1)'s requirements was reversible error.

### A. Was section 365(b)(1) triggered?

The curative provisions of section 365(b)(1) are triggered only "[i]f there has been a default." 11 U.S.C. § 365(b)(1). These six words are at the heart of this appeal. First, the parties dispute whether section 365(b)(1) is triggered where a default is cured before assumption. Second, they dispute whether the bankruptcy court correctly construed "default" as limited to *material* defaults that trigger forfeiture of a lease under California landlord-tenant law. We address each issue in turn and conclude that section 365(b)(1) was triggered in this case.

#### 1. Must a default be ongoing at the time of assumption?

Hawkeye argues that section 365(b)(1)'s curative requirements were not triggered because there was no *uncured* default at the time of assumption. This is incorrect for two reasons. First, under the plain terms of the statute, section 365(b)(1) is triggered "[i]f there has been a default." 11 U.S.C. § 365(b)(1). Instead of specifying leases in which there "was" a default or leases in which there "is" a default, Congress coupled the past tense form of the verb "to be" with the auxiliary verb "has" to describe leases in which "there has been a default." Using the present-perfect tense in this way refers to situations where a default has occurred regardless of whether that default has been resolved or is ongoing.

Second, while it is true that a debtor that has previously cured a default need not provide *cure* as a condition of assumption under section 365(b)(1)(A), the other two

requirements—compensation for pecuniary loss and adequate assurances of future performances—may nonetheless still apply, depending on the circumstances. *See* 3 COLLIER ON BANKRUPTCY ¶ 365.06[2] (Richard Levin & Henry J. Sommer eds., 16th ed. 2022) [hereinafter COLLIER ON BANKRUPTCY] (stating that a landlord is "entitled to insist that any defaults, *whenever they may have occurred*, be cured, that appropriate compensation be provided, *and that, a past default having occurred, adequate assurance of future performance is available*") (emphasis added); *see also In re Wingspread Corp.*, 116 B.R. 915, 928 (Bankr. S.D.N.Y. 1990) (holding that a default under 11 U.S.C. § 365(b)(1) "does not have to be present)" *and In re Patriot Place, Ltd.*, 486 B.R. 773, 795 (Bankr. W.D. Tex. 2013) (same). The assertion that section 365(b)(1) can provide no relief for a landlord where a default already has been cured is simply incorrect both as a matter of interpretation and common sense.

Here, the bankruptcy court determined that there was no active default when it granted Hawkeye's motion to assume the lease. We conclude that this finding did not render section 365(b)(1)'s curative requirements inapplicable.

**2. Must a default be material?**

Next, the parties dispute whether a "default" sufficient to trigger section 365(b)(1) occurred. The Bankruptcy Code does not define "default." We interpret an undefined statutory term "in accordance with [its] ordinary meaning." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014) (citation omitted). The ordinary meaning of "default" is uncontroversial: it means "[a] failure to perform a task or fulfill an obligation." *American Heritage Dictionary of the English Language* 345 (1976); *see also* Black's Law Dictionary 505 (4th ed. 1968) (defining

IN RE HAWKEYE ENTERTAINMENT 13

"default" as the "omission or failure to perform a legal duty").[3]

To determine whether there was an omission or failure to perform a legal or contractual duty, we turn to the source of the duties—here, the real property lease between Smart Capital and Hawkeye, which we interpret under state law. *See Dunkley v. Rega Props., Ltd. (In re Rega Props., Ltd.)*, 894 F.2d 1136, 1139 (9th Cir. 1990); *see also Three Sisters Partners, LLC v. Harden (In re Shangra-La, Inc.)*, 167 F.3d 843, 848 (4th Cir. 1999) (11 U.S.C. § 365(b)(1) "sends us back to state contract law for a determination of the terms of default and the landlord's rights upon default under the lease").

Here, the bankruptcy court held that whether a "default" occurred for purposes of section 365(b)(1) depends on whether the default was "material" under California law such that it warranted forfeiture of the entire lease: "[T]he default on an unexpired lease is determined pursuant to state law, here California law. Whether there's a breach that gives the landlord the right to defer forfeiture of the default lease is based on whether the breach is material." We find no basis for this interpretation. The lease itself does not define default in this manner: it does not specify what constitutes a default at all.[4] Likewise, California has not adopted a special

---

[3] 11 U.S.C. § 365 was enacted in 1978 by the Bankruptcy Reform Act. *See* Pub. L. No. 95-598, 92 Stat. 2549. Therefore, we rely on the definitions accepted at that time in determining the meaning of the words of this provision. *See Bostock v. Clayton County*, 140 S. Ct. 1731, 1750 (2020).

[4] Smart Capital contended for the first time during oral argument that Article 16.1 of the lease defines "default." This provision, entitled "Defaults by Tenant," states that Smart Capital may treat any noticed

| 14 | IN RE HAWKEYE ENTERTAINMENT |
|---|---|

interpretation of "default" different from the ordinary meaning described above. California courts have construed this term consistent with its general dictionary definition. *See, e.g., Bawa v. Terhune*, 244 Cal. Rptr. 3d 854, 858 (Cal. App. Dep't Super. Ct. 2019) (defining "default" using its "common definition," meaning "failure to do something required by duty or law"). Finally, bankruptcy courts have recognized that whether a contract has ever been in default is different from whether the contract is terminated because of that default. *See, e.g., Gallatin Hous. Auth. v. Talley (In re Talley)*, 69 B.R. 219, 223 (Bankr. M.D. Tenn. 1986) (noting that "termination" and "default" are not coextensive).[5]

---

default that has remained unremedied for 15 days as a "breach" and may terminate the lease. While this provision identifies Smart Capital's procedural remedies when there *is* a default, and how long it must wait before seeking them, it does not actually define *what* a default is. *See In re Metromedia Fiber Network, Inc.*, 335 B.R. 41, 49 (Bankr. S.D.N.Y. 2005) (applying a similar analysis to an analogous lease provision). Thus, we reject Smart Capital's argument that the lease defined what constitutes a default for purposes of triggering section 365(b)(1).

[5] The bankruptcy court made a passing reference to *Hall v. Perry (In re Cochise College Park, Inc.)*, 703 F.2d 1339 (9th Cir. 1983), when interpreting default as including an element of materiality. But in that case, we were answering a different question than presented here. There, the issue was whether the contracts at issue were *executory*. *Id.* at 1348. An executory contract is one "under which the obligations of both the bankrupt and the other party to the contract are so far unperformed [] that the failure of either to complete performance would constitute a *material breach* excusing the performance of the other." *Id.* (emphasis added) (citation omitted). Thus, we were determining whether a party's failure to perform its remaining obligations would give rise to a "material breach" given the nature of executory contracts, not because a default must be "material" to trigger section 365(b)(1). *Id.* at 1348 n.4.

IN RE HAWKEYE ENTERTAINMENT 15

For these reasons, we hold that the bankruptcy court erred in narrowly interpreting "default" to refer only to defaults that are sufficiently material to warrant forfeiture of the lease under California law because there is nothing in section 365(b)(1) to support this interpretation.[6]

Hawkeye alternatively argues that even if the bankruptcy court erred in interpreting "default" as including an element of materiality, its motion to assume the lease was nonetheless properly granted without analysis of section 365(b)(1)'s curative requirements because "some concept of materiality is inextricably woven into the very fabric of § 365(b)." That is, Hawkeye argues that the bankruptcy court did not err because courts "routinely look to state law on the critical issues of materiality, substantive rights, and consequences" when "resolving a § 365(b) motion." We disagree. As already explained, the Bankruptcy Code does not require that a "default," as that term is used in section 365(b)(1), be "material." *See In re Senior Care Ctrs., LLC*, 607 B.R. 580, 588 (Bankr. N.D. Tex. 2019) (disagreeing that "materiality is a factor" for purposes of section 365(b)(1)). Several other provisions in the Code, though arising in different contexts, specify that default must be "material," suggesting that Congress could have limited section 365(b)(1)'s application to material defaults if it had wanted to. *See, e.g.,* 11 U.S.C. § 1112(b)(4)(N) (cause for conversion or dismissal of a Chapter 11 case includes "material default by the debtor with respect to a confirmed

---

[6] There are some contexts in which lease termination is relevant, but those involve different subparts of 11 U.S.C. § 365 not at issue here. For example, 11 U.S.C. § 365(c)(3) states that a lease may not be assumed if it was terminated under state law prior to the bankruptcy filing. However, the parties do not contend that their lease was terminated before the lease was assumed.

plan"); § 1208(c)(6) (same for Chapter 12); § 1307(c)(6) (same for Chapter 13). Furthermore, section 365(b)(2) specifically exempts certain types of defaults involving ipso facto and forfeiture clauses; nonmaterial defaults are not one of the exempted categories. 11 U.S.C. § 365(b)(2).

Hawkeye cites to several cases in arguing that a default must be material to trigger section 365(b)(1), but they are distinguishable. For example, in *In re Joshua Slocum Ltd.*, 922 F.2d 1081 (3d Cir. 1990), the Third Circuit considered only the scope of a bankruptcy court's ability to preclude enforceability of ipso facto and termination clauses under § 365(b)(2). Furthermore, it did so within the context of the "heightened restrictions on the assumption and assignment of leases of real property in shopping centers." *Id.* at 1092. Likewise, other cases where courts have considered the materiality of a default involved assumption of an executory contract that did not involve real property and concerned a default that was allegedly "incurable." *See, e.g.*, *In re Vent Alarm Corp.*, No. 15-09316-MCF11, 2016 WL 1599599, at *2 (Bankr. D. Puerto Rico 2016).[7]

### B. Was the bankruptcy court's failure to impose section 365(b)(1)'s requirements harmless error?

Because we conclude that section 365(b)(1) was triggered in this case, we must address whether the bankruptcy court's failure to analyze section 365(b)(1)'s curative requirements was reversible error. Federal Rule of Civil Procedure 61 instructs that "[u]nless justice requires

---

[7] Hawkeye also argues that section 365(b)(1) was not triggered because the bankruptcy court found that there was *no* default of the lease, regardless of materiality. We reject this argument. The bankruptcy court's analysis of whether a default occurred was inextricably bound up in its consideration of materiality.

otherwise," courts "must disregard all errors and defects that do not affect any party's substantial rights." Federal Rule of Bankruptcy Procedure 9005 makes Rule 61 applicable to bankruptcy proceedings.

Here, the only curative requirement at issue is "adequate assurance of future performance" of the lease. 11 U.S.C. § 365(b)(1)(C).[8] The Bankruptcy Code does not specify what constitutes "adequate assurance of future performance." Instead, courts apply this requirement "based upon the facts and circumstances of each case." COLLIER ON BANKRUPTCY ¶ 365.06[3][a]. Here, the record establishes that the bankruptcy court determined that any default was cured as of the time of assumption, and that many of the alleged defaults were either not defaults in the first place or were only minor deviations from the contract terms. Thus, any adequate assurance responsive to the alleged defaults would be little more than simple promises not to deviate from the contract terms again. *See also In re Metromedia Fiber Network, Inc.*, 335 B.R. 41, 50 (Bankr. S.D.N.Y. 2005) (reasoning that adequate assurances under section 365(b)(1)(C) are only "appropriate and necessary where the counter-party has *reasonable grounds* for insecurity with respect to the debtor's ability to fully perform its obligations under the contract") (emphasis added). Indeed, at oral argument Smart Capital could not identify what more would

---

[8] We consider Smart Capital's arguments relating only to adequate assurances of future performance because it did "not specifically and distinctly argue[]" any other points in its briefing regarding curative action that it believes Hawkeye must provide to satisfy section 365(b)(1). *See Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986); *see also Campbell v. Kincheloe*, 829 F.2d 1453, 1455 n.1 (9th Cir. 1987) (declining to reach an argument "made for the first time at oral argument"). Accordingly, we deny Smart Capital's motion for judicial notice, filed the day before oral argument, as moot.

18              IN RE HAWKEYE ENTERTAINMENT

be needed to address any insecurity that it may have related to Hawkeye's alleged past lack of performance. This is likely due to the nature of the alleged defaults. For example, it is difficult to imagine what "adequate assurance of future performance" Hawkeye could provide related to not placing banners on the façade of the building and not having more than 50 all-age events per year other than a promise not to do these things in the future. And we do not see how such general promises, likely made redundant by Hawkeye's assumption of the lease, implicate Smart Capital's substantive rights.

    That is, while section 365(b) affords Smart Capital the right to receive adequate assurances of future performances as a textual matter, Smart Capital has not explained how any additional assurance of future performance would have substantively impacted its right to full performance of the lease terms or how, given the nature of the alleged defaults, Hawkeye failed to demonstrate such assurances in the assumption process itself. Rather, it seems that requiring further assurances would serve only to assist Smart Capital in its attempts to avoid continuance of an under-market lease. But this is not a right or benefit afforded under section 365. *See In re Natco Indus., Inc.*, 54 B.R. 436, 441 (Bankr. S.D.N.Y. 1985) (While section 365 provides "protection from having to be saddled with a debtor that may continue to default and return to bankruptcy," it does not allow a landlord to "improve its position" by "escap[ing] the bargain it made" in pursuit of an opportunity to "rent the premises to others at a higher" amount.). Smart Capital made the deal it made with Hawkeye. And while it is entitled to assurance that Hawkeye will comply with the terms of that deal, it is not entitled to use section 365(b)(1) as a means to get out of a bad deal so that it can make a better one. For these reasons, we conclude that the bankruptcy court's failure to analyze

whether Hawkeye satisfied section 365(b)(1)'s curative requirements before granting its assumption motion was harmless error. Fed. R. Bankr. P. 9005.

**AFFIRMED.**